Tom F. Coleman, attorney for Mr. Steve Calderone, who is the appellant in this case. He's a used car salesman who was terminated in retaliation for his report of the refusal of his employer to provide financing or refer his four minority customers for financing of their new car that they wish to purchase. This was in violation, as we alleged it, in violation of the Equal Credit Opportunity Act, which has an anti-retaliation provision in it that says that no covered person or service provider may terminate or discriminate against an employee for reporting a violation of the Act. What do you do about the auto dealer exclusion? Sorry? What do you do about the auto dealer exclusion? Yes, the car dealer exclusion provides that the Bureau, that is, the Consumer Protection Act Bureau, who is in charge and has been given the jurisdiction over consumer protection matters, the Bureau may not exercise any rule-making, supervisory, enforcement, or other authority, including any authority to order assessments and so forth, does not say anything about jurisdiction. This is where I think the district court made an error, where I think the car dealer's position is in error, because the provision of the Consumer Protection Act says that if the employee reasonably believes that he is reporting a violation, it is subject to the jurisdiction of the Bureau. Jurisdiction is a different concept entirely from enforcement authority. And to kind of emphasize that point, there is another provision, if I can find it, that has both of the phrases in one sentence. And here I found it, I think. This is 12 U.S.C. 5567A, which is the non-retaliation provision again. But if you go down to Section 4, it says that where the employee has objected to, refused to participate in an activity or task that he reasonably believes to be in violation of any law, rule, order, standard, or provision subject to the jurisdiction of, or, not and, or, enforceable by the Bureau. The statute itself has carved out a difference between the jurisdiction of the Bureau and the enforcement and regulatory power of the Bureau. And that's the point where I contend the error has been made here. We are saying that he had a reasonable belief that it was illegal and contrary to the law, the Consumer Protection, Finance Protection Act, to discriminate against minorities in providing financing. And that based on that reasonable belief, which was within the jurisdiction of the Board, he could not be retaliated against by his employer, no matter who it was, whether it was a car dealer or not. Do you agree that if, because the language says, may not exercise any rulemaking, supervisory, enforcement, or any other authority over a motor vehicle dealer, do you agree that if there is no jurisdiction under this Consumer Finance Protection Act, the fact that your client might have had a reasonable belief wouldn't cure that problem? Well, if there was jurisdiction under the Act, then he, of course, his belief was not, was, you know, had to be reasonable because it was actually true. But my question is just the opposite of that. Assume there is no jurisdiction under the Act. Yes, sir. The fact that he had a reasonable belief there was does not give jurisdiction over this claim. Yes. Yes. I disagree with that, and it's two reasons. One reason is the fact that they were a service provider, which is a separate category of person, whether it's an auto dealer or not. The statute is particular that it says no covered person or service provider, and their affidavit from Frank Pecka says in particular that he was providing the service of collecting all of the financial data from the customers and transmitting it to a lender. The lender did nothing but either fund the loan or say it didn't want to. He did everything. That was the service he provided as an employee of the dealership. So under the particular language of the Act, no covered person or service provider shall terminate or in any way discriminate, brings us back in, even though there's no enforcement or regulatory authority. There is jurisdiction, and if there's jurisdiction, then the anti-retaliation provisions cover Mr. Calderon. I have one other item that will, I think, establish that even dispositively, and I found this as I was getting ready for my presentation today. This is an official interpretation, number 6500 of the Consumer Financial Protection Bureau Supplement 1 to Part 102. It's very short. And it says a creditor, referrals to creditors, which is essentially what Mr. Calderon was gathering all of the data for, referral to the creditor, the lender. For certain purposes, the term creditor includes persons such as real estate brokers, automobile dealers, home builders, home improvement contractors, who do not participate in credit decisions but who only accept applications and refer applicants to creditors or select or offer to select creditors to whom credit requests can be made. These persons must comply with Section 1002.4a, the general rule prohibiting discrimination, and with Section 1002.4b, the general rule against discouraging applications, which is the very thing that we're alleging here, that we're claiming. This is, as an official interpretation, it was effective January 18, 2014. Mr. Calderon's termination was August 2014, so this does govern this particular action. And I can— Is that an official interpretation of 5567 or it's of the Equal Credit Opportunity Act? I'm sorry, Your Honor, I just— Is that the interpretation that you found and just read? It's a Department of Labor interpretation of the Equal Credit Opportunity Act? Yes, sir. Yes, sir. Yes, sir. That sort of begs the question as to whether or not that law is within the jurisdiction of the Bureau's— The— Right? It's not— The Bureau is the Bureau of— Let me— This may help you or help you clear up my thinking. Consumer Financial Protection Bureau. Section 5481. Yes. That lists the laws that come within the purview of the Bureau, correct? Yes, and it's— Doesn't that statute itself incorporate the exemption in 5519? It is discussing the exemption. That's—in other words, it's the very same law. It's discussing the— The list of laws that the Bureau enforces or oversees or has jurisdiction over, that list exists at 5548, right? The—as I'm understanding the question, we're talking about the Consumer Protection Act— I'm sorry, 55— The Bureau. Bureau for the Consumer Protection Act Bureau. That's whose jurisdiction we're discussing. Right. What's—which is the statute that lists the laws that are subject—that the Bureau has jurisdiction over? It's the very same one. It's 50—or it's U.S.C. 5519. That is the one that contains the exclusion. 5519 contains the exclusion, and it says that it excludes car dealers from any regulatory or enforcement authority. Or any other. It does not say in that jurisdiction. Or any other authority. Or any other authority. Or any other authority. Thank you, Your Honor. That's correct. But I do—I do contend—sorry, I'm trying to do the best I can with my hearing aids, but I'm—we're communicating. The— Mr. Rosenthal cited the Southern District of New York Murray decision, correct? The— The district judge here. I'm so sorry, Judge. You can't hear? I can't hear. Oh, okay. I hear pretty good, but— That's all right. For some reason, I didn't hear that. Do you—I think I'm right that the district court relied on a case called Murray, a district court decision. The Murray line of case law. So I really am not familiar with that particular line of case law. I have the case law that has followed my theory of this case from the Sixth Circuit and the Seventh Circuit, for which they held that car dealers were, in fact, subject to the anti-retaliation sections of the Act, even though they weren't lenders. And those cases, Tyson v. Sterling Reynolds, 201-6 Lexus, 16285, a Fifth Circuit case in 19—2016, just now. And then it followed Treadway v. Gateway Chevrolet, 362 Federal Third 971, which was a Seventh Circuit case. Both of those involved car dealerships. They were not lenders, but they were held to be subject to the jurisdiction of the Bureau. Those two cases are in your principal brief? You didn't file a reply brief. Those are in your principal brief. They're not in my principal brief. This is what I have discovered while I was getting prepared for my presentation today, was that we had an official interpretation, which I think is binding and dispositive. We have two cases that in other circuits have held that the car dealerships are subject to the jurisdiction, even though they're not lenders. And we have this Court, the Fifth Circuit's own interpretations, that the reasonable belief, even though it's wrong, even though that the facts of the case show that there was no violation, that the person retaliated against was still protected. Because, after all, this is a statute that is supposed to be self-executing. In other words, the Department of Labor is charged with protecting consumers under this Act. The Board is not charged with any actions. The District Court is charged with enforcement of the Act if the Department of Labor doesn't or if they turn it over to them. So the enforcement lies within the District Court's jurisdiction and the Department of Labor's jurisdiction, not the Board's jurisdiction. And that's kind of what is reflected by this particular provision, that the Board will have no regulatory or enforcement or other jurisdiction. The regulatory part is particularly important to the car dealers because they're the fourth or third largest lender in the country. And all the other lenders have to turn in statistical reports regularly on what their customer base is. Are they discriminating against minorities? The car dealers don't do that. The lenders for the car dealers do it. So regulatory matters are a big deal to the car dealers. Enforcement matters, however, where there's a charge like we have here of discriminatory retaliation or reporting discrimination, that is left to the—not the Board, but to the court or to the Department of Labor. And that's still recognized in that same distinction between jurisdiction and the regulatory authority. All right. You've saved time for rebuttal, Mr. Coleman. Thank you. Yes, sir. Mr. Mitchell? Thank you, Your Honors. May it please the Court. Your Honors, my name is Mike Mitchell. I'm the attorney for the Appley Sonic Houston. Your Honors, I think you correctly pointed out that the proper place to start the analysis of this case is with the statute. Contrary to what the Appley's attorneys stated here, the cause of action brought here was not brought under the Employee—I'm sorry, the Equal Credit Opportunity Act. It was, in fact, brought under the retaliation provisions of the Consumer Financial Protection Act. So accordingly, that's where you have to start the analysis of whether or not the district court properly dismissed the case on summary judgment. And obviously, we believe that the district judge, Chief Judge Rosenthal of the Southern District of Texas, did appropriately dismiss the case. Your Honors, again, looking at the applicable statute, the Consumer Financial Protection Act, it says that no covered person or service provider shall terminate or discriminate against a covered employee who has provided information to the Bureau. And it goes on, it says that the employee reasonably believes to be in violation of any provision of the law that is subject to the jurisdiction of the Bureau or any rule, order, standard, or prohibition prescribed by the Bureau. So you have to look and see, well, what does the Bureau cover? And as Your Honor, Judge Higginson pointed out, you have to look at Section 5519 for that. And Section 5519 states that the Bureau may not exercise rulemaking, supervisory enforcement, or any other authority over a motor vehicle dealer predominantly engaged in the sale or servicing of motor vehicles. And it has some other language that goes on. Now, at the summary judgment stage, we submitted evidence establishing that our client, Sonic, was in fact a motor vehicle dealership. And accordingly, it is exempted from protection under jurisdiction or enforcement authority from the Bureau, the Consumer Financial Protection Bureau. There was, in fact, an exception to that exemption that could have been relied on by the plaintiff's attorney. They didn't do that, as District Judge Rosenthal pointed out. We submitted summary judgment evidence that was not controverted to show that we are, in fact, a motor vehicle dealership covered by this statute. And, therefore, we are exempt from coverage under the Consumer Financial Protection Bureau. The plaintiff filed this action under three claims, Texas State Law, Sabine River, Section 1981 Federal Contract Law. Right. And also this, we'll call it the CFPA. Right. What is the relief under the CFPA that, say, couldn't be found under Title VII or something else? Is there some form of relief he's seeking here that's available only under the CFPA? Not that I'm aware of, Your Honor. And, certainly, that issue is not presented before the Court. I mean, respectfully, I'll submit, obviously, the only issue before the Court is the claim under the CFPA. Right. But, to your point, I don't— What is he seeking under the CFPA? What relief is he seeking? Just to be reinstated, or is he seeking money damages? It would be—well, I'm not sure what he's seeking. But whatever relief there is, you're exactly right to suggest that. To the extent it's either one of those things, be it money damages or reinstatement, both of those remedies are available at least under Section 1981. I'm not sure that reinstatement would be available under the subpoena pilot cause of action, the Texas law cause of action, but certainly under both Section 1981. And you could have either reinstatement or back pay money damages under both of those statutes. The 1981 issue is being arbitrated? It has not been. Although the district judge has ordered that part of the claim to arbitration, the plaintiff has—or appellee—has never sought arbitration with respect to that matter. So that's just hanging out there. I'm sure that that will be another issue that we will be addressing in the future if and when they do file that claim. The Equal Credit Opportunity Act has a looser or more comprehensive definition of creditor, correct? Correct. So—but the issue here is can he seek relief as a whistleblower under the CFPA, correct? He's pursuing relief under 5567. Correct. Right, because as I understand it, the ECOA, the Employee Credit Opportunity Act—I'm sorry, the Equal Credit Opportunity Act, there is no private cause of action for an employee in that situation. He could not sue under that statute. He had to have brought this claim under the CFPA, which, as you pointed out before, is one of the 18 statutes enumerated under the CFPA over which the Bureau has jurisdiction. And that enumeration occurs where in the statute? 5481? Yes, correct. 5481. Does 5481 further incorporate the 5519 exemption? Yes. Yes. So is your argument that the laws are enforced by the Bureau but not to the extent that an exemption in 5519, is that your argument? Absolutely it is. And the statute specifically says that. It says, except as otherwise provided herein. And I'm just, you know, the reason I'm asking is I would have thought that 5519 operated so that they weren't a covered entity at all. But reading your brief and especially footnote 12, it seems like you're acknowledging that they might be a service provider. Oh, absolutely. And I don't think that that matters whether or not they're a service provider. And you'll see that we, again, I think it is in footnote 12, we're saying we don't know why that's relevant or why that's even an issue. Because, again, that language is still exempted. It says except as otherwise provided. So whether or not you are a covered employer or a service provider, it's still the same exemption. I don't know why that, there is no distinction there or there is a distinction with no difference. It doesn't matter which one it is. They're still exempt under the 5519 provision. Are you aware of any circuit authority, especially of our own, that has found car dealers subject to, you heard mention of that? Absolutely not. And as you pointed out or Your Honor pointed out, that certainly is not in the principal brief. We have researched this ad nauseum. I can tell you that Judge Rosenthal and her clerks researched this ad nauseum. She asked us for additional briefing on it. We all submitted everything that we could. We have cited the legislative history, which surprisingly we were able to find on this statute. You got the representative from California and the senator from Kansas who both talked about this provision and specifically noted that automobile dealerships are going to be exempted from coverage under the statute. They specifically say that in the legislative history that we have cited in our brief. So I'm surprised to hear that assertion today. Respectfully, I don't believe that it's right. I can't imagine that it is after the exhaustive research that we have all done, both myself and my law firm and Judge Rosenthal and her staff. I don't believe that there is any such authority like that. Just on the plain language, could it be an employee could have a reasonable mistaken belief in the law? No. And Judge Smith authored an opinion that they rely on in their brief. It's the Wallace v. Tesoro opinion. And that was a very interesting opinion because what the court held there is it was improper to have dismissed a case on summary judgment when the question was, quote, the plaintiff's belief was, quote, grounded in a factual dispute. What we have here is not a factual dispute. This is a legal dispute, if anything, about what the law says. We don't have the plaintiff saying, well, we have a factual dispute about whether or not something happened. He's just saying, well, no, this statute does apply to me. We say as a matter of law, the statute does not apply. If I could give a good example of this, or I think a good example of it because I thought about it earlier, let's say you had an employee who was suing for retaliation under the ADEA, saying that he was retaliated against for complaining about age discrimination. Well, as you know, you have to be 40 under that statute to be covered. If I, on behalf of the employer, move for a summary judgment saying, well, look, this guy is only 39, so, Your Honors, you must throw this case out, you would have to do so because as a matter of law, he could not have a reasonable belief that he was discriminated against because he's only 39. The statute only applies to people who are 40. However, if he came up and said, wait a minute, Your Honor, I've got my birth certificate here, and contrary to what the employer's records say, I am not 39, I am in fact 41, well, then we fall under Judge Smith's opinion in the Wallace v. Tesoro case where you have a factual dispute about whether or not the employee is covered. You're a factual dispute as to whether discrimination occurred, not a legal dispute as to whether or not how these statutes integrate. Absolutely. And so I think that's a great example, kind of a common sense one. If we say he's 39 and he's got something that says he's 41, well, yeah, we've got a factual dispute on whether or not he could have a reasonable belief. But here, where you have a statute that we submit on its face says that he is not covered as a matter of law, we think that this falls more in line of the Breeden case, the U.S. Supreme Court case in Breeden, and all the Fifth Circuit progeny that follows behind that, that says where you don't have a cause of action as a matter of law, you cannot have a reasonable belief that you had been discriminated against under that statute. It just doesn't make sense. And I think that that's what all the applicable jurisdiction holds in the way that this case should be decided. And so we submit that, again, based on the language of the statute, again, reading from the Consumer Financial Protection Act, the exemption contained in Section 5519, that it's clear that the automobile dealerships, like my client, Sonic Houston, are excluded from coverage under the statute. And further, the plaintiff could not have had a reasonable belief that he was complaining of a violation under that statute because, again, he's not covered under the statute in the beginning. So we submit that the judge, District Judge Rosenthal, correctly granted summary judgment in this case, and we ask that the Court affirm that decision. Roberts. All right. Thank you, Mr. Mitchell. Thank you. Coleman, time for your vote. Thank you. I just have two items to mention. First, the reasonable belief that was just being discussed. It's the Moyo case that we cited in our brief says that they note that a reasonable mistake may be one of law or fact. So you can have a mistake of law. There's really no reason to say a reasonable belief at all if, in fact, if you're wrong, that it doesn't cover you if you make your report. It's protection for the person that makes a report. If he has a reasonable belief, whether it's wrong as a matter of law or wrong as a matter of fact should not make any difference. The second thing is addressing Judge Markdale's question about what's the difference. We have the 1981 claims. The judge said that they can go or should be referred to arbitration. The other case was a state law case, which we allowed her to dismiss. There is three reasons why we don't want, why this is a very important case, and we want to go back for trial with Judge Rosenthal. The first thing is that under the statute that we're relying on here, we're entitled to a jury trial. That is, arbitration is prohibited. There's no question about not having an opportunity to go to a jury. The second thing is, is that the burden of proof is entirely different. The statutory burden of proof in our case would be if there was any retaliatory intent that led to his dismissal. Not was it predominantly or entirely, solely, like is in the state statute. And so it's an entirely different burden of proof that is much easier on the plaintiff. So we're wanting to hold on to this statute. This is why we're here. Even though we could go to 1981 or some other statute, this is important. And it's important for the administration of justice that these people who report discrimination in financing have protection. Because Mr. Calderon was immediately investigated. As soon as he made his report, fired three or four weeks later. And so the whole idea and import of the law was to put an end to discrimination. Mr. Giblin fired about the same time that Calderon was fired. Mr. Calderon was... Mr. Giblin. He was fired about five minutes before Mr. Calderon was fired. We don't know the reasons for that, but I think it was unrelated. Any further questions, I'm giving you back my time. Thank you, Mr. Coleman. Your case is under submission.